UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**COREY WOOTEN,**

    **Plaintiff,**

v.                               Civil Action 2:19-cv-664
                                  Judge Edmund A. Sargus, Jr.
                                  Magistrate Judge Elizabeth P. Deavers

**DR. BARBARA WOODS,** *et al.*,

    **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff, Corey Wooten, currently incarcerated in the London Correctional Institution, proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983. (ECF No. 5.) Following an initial screening, Plaintiff is proceeding on his claims as set forth in his Complaint against Defendants Barbara Woods, Robin Murphy, Michael Helberg, John Gardner, and Andrew Eddy in their individual capacities.[1] This matter is before the Court for consideration of Defendants' Motion for Summary Judgment. (ECF No. 54.) Plaintiff has filed a response (ECF No. 58) and Defendants have filed a Reply (ECF No. 59.) For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Defendants' Motion for Summary Judgment.

**I.**

The following facts, taken from Plaintiff's unverified Complaint (ECF No. 5), appear to be undisputed. (*See* ECF No. 54 at 2-4.) Subsequent to his conviction and sentence, Plaintiff

---

[1] Complaint, ECF No. 5, at ¶ 1.

was committed to the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), and upon his arrival at the Correctional Reception Center ("CRC") on February 3, 2016, he began receiving treatment for his psoriasis. (ECF No. 5 at ¶¶ 6, 7.) Plaintiff's medical records from Oakview Dermatology, prior to his incarceration, indicated that he was responding well to a treatment plan which included Humira injections, and that other than psoriasis his overall health was good. (*Id*. at ¶¶at 8, 9.). On April 28, 2016, Plaintiff was transferred from CRC to Chillicothe Correctional Institution ("CCI"), where he began receiving treatment with Methotrexate and cortico steroids. (*Id*. at ¶ 11.) This treatment was continued upon Plaintiff's transfer to LoCI on April 10, 2017. (*Id*. at ¶ 12.)

On May 4, 2017, Plaintiff was seen by Defendant Woods at LoCI, where Plaintiff requested that he be placed back on Humira because his psoriasis was not responding to Methotrexate. (*Id*. at ¶ 13.) Defendant Woods continued his psoriasis treatments using Methotrexate and cortico steroids but also ordered lab tests to monitor Plaintiff's liver enzymes because Methotrexate may cause liver damage in some patients. (*Id*. at ¶ 13) (sic).[2] In June of 2017, Defendant Woods raised Plaintiff's dosage of Methotrexate from 15mg to 20mg because his psoriatic symptoms were not improving. (*Id*. at ¶ 14.) Defendant Woods continued to monitor Plaintiff's liver enzymes, and upon receiving lab results showing elevated liver enzymes, she lowered Plaintiff's Methotrexate dosage to 10mg. (*Id.* at ¶¶ 14-15.)

Plaintiff saw Defendant Woods again in August 2017 and requested to be placed on Humira. (*Id*. at ¶¶ 16, 17.) He complained that he was experiencing an increase in pain and was unable to exercise regularly, which led him to become obese. (*Id.* at ¶ 17.). Defendant Woods said that she had reviewed Plaintiff's medical records and would look into getting him back on

---

[2] Plaintiff's Complaint contains two paragraphs numbered as 13.

Humira and/or requesting that he be seen by a rheumatologist. (*Id*. at ¶ 19.)  She attempted to receive these authorizations, which needed to be made via Health Care Administrator Murphy by a consult with the Collegial Review Board. (*Id.* at ¶ 21.)  The Collegial Review Board denied the requests and recommended alternative treatments. (*Id*. at ¶ 22.)  Plaintiff began experiencing symptoms of psoriatic arthritis and informed Defendant Woods of this in September 2017. (*Id*. at ¶ 23.)  Defendant Woods again requested that Plaintiff be permitted to see a rheumatologist. The Collegial Review Committee denied this request and recommended an alternative treatment. (*Id*. at ¶ 25.)

In November 2017, lab results from Plaintiff's then most recent bloodwork indicated that his "inflammation levels" were six times higher than normal. (*Id*. at ¶ 27.)  Plaintiff complained again to Defendant Woods that he was in pain and asked that she try another medication. (*Id*. at ¶ 28.)  In late 2017, Defendant Woods placed Plaintiff back on Methotrexate for a short time, but due to rising liver enzyme levels, he was taken off that medication. (*Id*. at ¶ 29.)  From approximately December 2017 through May 2018, Plaintiff continued to see Defendant Woods and informed her that his psoriasis symptoms were continuing to worsen. (*Id*. at ¶ 30.)

The following additional facts, also apparently undisputed, are taken from the Declaration of Dr. Andrew Eddy, State Medical Director for the ODRC, submitted in support of Defendants' Motion for Summary Judgment.  (Eddy Decl., ECF No. 54-1.)

When an inmate at an ODRC institution is diagnosed and treated by a physician at that facility, the diagnosis and treatment- including any prescribed medications- results from that physician's professional independent medical judgment.  (Eddy Decl. at ¶ 5.)

ODRC maintains a "Drug Formulary" specifically developed for inmates housed at its correctional institutions. (Eddy Decl. at ¶ 6.) The Formulary lists standardized medications that

3

may be prescribed and dispensed for inmates by advanced-level providers without prior authorization from the ODRC Office of Correctional Health Care. (*Id*.) ODRC regulations require that medications on the ODRC's Drug Formulary should be used and assessed as a treatment option prior to prescribing non-formulary medications. (*Id*.at ¶ 8.) Similar to the requirement of many medical insurance providers, medications that are not listed on the Drug Formulary require prior authorization, which is done through a request from an Advanced Level provider, such as Dr. Woods. (*Id*. at ¶ 7.) On the ODRC Drug Formulary, Methotrexate and cortico steroids are the medications listed for treatment of psoriasis and rheumatoid arthritis. (*Id*. at ¶ 10.) Humira is not on the Drug Formulary. (*Id*.)

ODRC policy also dictates that, while outside physicians may make recommendations as to an inmate's treatment, including pain medication and non-formulary medications, physicians at the individual institutions make the final decision as to treatment based on their own clinical assessment. (*Id*. at ¶ 11). When an inmate requires outside specialty care, a Consultation Request is generated. Consultation Request forms are used to secure non-ODRC medical specialist care. (*Id*. at ¶ 12.) If the consultation request is approved by the Collegial Review process, it is sent to ODRC Central Office Scheduling Department who coordinates with the outside facility's scheduling department. (*Id*.) The ODRC Central Office contacts the outside specialty provider, who then provides the prison medical department with the date. (*Id*.) The prison medical staff has no control over an outside medical facility's scheduling. (*Id*.)

## II.

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the

4

light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.' " *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,' ... there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.

Plaintiff contends that "Defendants were deliberately indifferent to his serious medical needs by insisting on prescribing him Methotrexate despite their knowledge that Humira is the only medication that has been proven effective for treating [his] psoriasis." (ECF No. 5 at ¶ 3.) Further, he asserts that this action "subjected him to the risk of infection, worsening psoriasis, and eventually led to the development of additional health problems, including but not limited to psoriatic arthritis." (*Id*. at ¶ 4.) Additionally, he explains that "Defendants continued to prescribe this ineffective medication until they eventually abandoned his treatment with medications altogether." (*Id.* at ¶ 5.) Plaintiff seeks declaratory and injunctive relief as well as monetary damages, including punitive damages. (*Id*. at § XI. Relief Requested.)

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his or her] serious medical needs." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011). Where the risk of serious harm is obvious, it can be inferred that the defendants had knowledge of the risk. *Farmer v. Brennan*, 511

6

U.S. 825, 842 (1994). The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the subjective component to be satisfied where defendants recklessly disregard a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012).

In moving for summary judgment, Defendants challenge both the objective and subjective elements of Plaintiff's Eighth Amendment deliberate indifference claim. In support of their motion, Defendants have submitted the Eddy Declaration, over 300 pages of Plaintiff's medical records (ECF Nos. 54-5; 54-6 as supplemented by ECF No. 56; 56-1; 56-2), a declaration from Defendant Murphy (ECF No. 54-3); and Interrogatory responses from Defendants Woods and Gardner (ECF Nos. 54-2, 54-4). Plaintiff's response, captioned as an "Objection" to a "Magistrate Opinion," is brief, is not supported by any evidence or exhibits and fails to cite to any record evidence, including his medical records as submitted by the Defendants. In reply, Defendants note Plaintiff's failure to come forward with any evidentiary materials and reiterate that Plaintiff's claim falls short as to both its objective and subjective elements. As explained below, the Undersigned agrees that Plaintiff has failed to raise any genuine issue of fact regarding any Defendant's deliberate indifference to his serious medical need.

**IV.**

Briefly, at the outset, the Undersigned concludes that a distinction must be drawn between the allegations directed to particular Defendants in the context of Plaintiff's deliberate indifference claim. Plaintiff alleges that Defendants Woods, Eddy, and Gardner all had some role in his medical care or, perhaps more precisely in Plaintiff's view, in the denial of his request for Humira injections to treat his psoriasis. His allegations with respect to Defendants Murphy and Helberg, however, are different. For example, as to Defendant Murphy, Plaintiff explains that her liability "stems from the abdication of her duties to ensure that Plaintiff received appropriate medical care." (ECF No. 5 at ¶ 50.) With respect to Defendant Helberg, Plaintiff alleges that his liability results from his "failure to properly address or discuss Plaintiff's ICR filed on March 16, 2018" or to "investigate Plaintiff's claims that he was being refused treatment for his serious medical needs." (*Id.* at ¶¶ 61-62).

There is no dispute that neither Defendant Murphy nor Defendant Helberg was Plaintiff's treating physician. Nor were they members of the Collegial Review Board. Plaintiff's allegations concede as much. Rather, they were medical administrators whose job duties included facilitating communication between the treating physician and the Collegial Review Board with respect to individual inmates' treatment plans. (Murphy Decl., ECF No. 54-3 at ¶¶ 5, 6.) Under ODRC Policy, physicians at the institutional level make the final decision as to an inmate's treatment based on their own professional judgment, although specialty care and non-formulary drugs must be approved via consultation with the Collegial Review Board. (Eddy Decl., ECF No 54-1 at ¶¶ 5-8.)

Plaintiff has provided no evidence suggesting that either of these Defendants had authority to override the decisions of Defendant Woods or Defendants Eddy and Gardner, members of the Collegial Review Board or to prescribe his desired treatment. Their lack of authority to prescribe Plaintiff's requested course of treatment is a sufficient basis for granting summary judgment in

their favor. *See Mitchell v. Hininger*, 553 F. App'x 602,607- 608 (6th Cir. 2014) (granting summary judgment on plaintiff's claim against health services administrator who did not have authority over particular actions at issue and separately concluding that a failure to act on the mere awareness of a plaintiff's challenge to the treatment provided by the medical staff "does not deliberate indifference make"). Additionally, to the extent Plaintiff contends that Defendant Helberg failed to properly address or investigate Plaintiff's complaint (ECF No. 5 at ¶¶ 61-62), "'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ("[Plaintiff] merely alleged that [the defendant] failed to remedy the situation after he had been informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim[.]"

Turning to Defendants Woods, Gardner and Eddy, as set forth above, the deliberate-indifference test has both objective and subjective components. *See Beck v. Hamblen County*, 969 F.3d 592, 600 (6th Cir. 2020). Because § 1983 does not permit vicarious liability on a defendant for another defendant's actions, Plaintiff must independently establish these objective and subjective elements for each of these remaining Defendants. *Id*. at 600.

Recently, the Sixth Circuit Court of Appeals in *Phillips v. Tangilag*, 14 F.4th 524, 534–35 (6th Cir. 2021) addressed the objective element at length in a manner particularly relevant here. In doing so, the Sixth Circuit determined that an inmate "could not 'rely on his serious medical needs alone to establish the objective element of his deliberate-indifference claim' where the evidence showed that he 'received extensive care.'" *Ashley v. Boayue*, No. CV 19-10484, 2021 WL 5911212, at *7–9 (E.D. Mich. Nov. 22, 2021), *report and recommendation*

9

*adopted,* No. 19-CV-10484, 2021 WL 5907927 (E.D. Mich. Dec. 14, 2021) (quoting *Phillips*, 14 F.4th at 536). Rather, the Sixth Circuit held that, because the plaintiff's claim "challenge[d] the adequacy of this undisputed care, he must show that the doctors provided grossly incompetent treatment." *Id.* The court explained its reasoning in this way:

> To prove this objectively serious harm in the health context, prisoners must first establish that they have "serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. They can do so, for example, by showing that a doctor has diagnosed a condition as requiring treatment or that the prisoner has an obvious problem that any layperson would agree necessitates care. *See Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013). A serious medical need alone can satisfy this objective element if doctors effectively provide no care for it. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).
>
> More frequently, doctors provide some care and prisoners challenge their treatment choices as inadequate. To establish the objective element in this common situation, prisoners must show more. *See Anthony v. Swanson*, 701 F. App'x 460, 463–64 (6th Cir. 2017); *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). Objectively speaking, this care qualifies as "cruel and unusual" only if it is "so grossly incompetent" or so grossly "inadequate" as to "shock the conscience" or "be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (quoting *Miller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005)). Ordinary individuals outside a prison's walls and inmates within those walls both face a risk that their doctors will perform incompetently. … But mere malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106, 97 S.Ct. 285. Only grossly or woefully inadequate care—not just care that falls below a professional standard—can be called "cruel and unusual." *See Rhinehart*, 894 F.3d at 737; *Jones v. Muskegon County*, 625 F.3d 935, 945–46 (6th Cir. 2010); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021); *Hoffer v. Sec'y, Fla. Dep't of Corrs.*, 973 F.3d 1263, 1271 (11th Cir. 2020)….
>
> For prisoners to prove grossly inadequate care, … courts generally require them to introduce medical evidence, typically in the form of expert testimony. *See Rhinehart*, 894 F.3d at 737, 740–43; *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

*Phillips,* 14 F.4th 524, 534–35.

Because the inmate plaintiff in *Phillips* had failed to introduce "expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so," the Sixth Circuit found that his claim of deliberate indifference

10

could not "get past the objective stage." *Phillips,* 14 F.4th. at 537. Likewise, Plaintiff's deliberate indifference claim here fails under the *Phillip* standards as to Defendants Woods, Gardner, and Eddy.

As a preliminary matter, the Undersigned is not convinced, as Defendants suggest, that Plaintiff has not sufficiently demonstrated that his psoriasis constitutes a serious medical need. (ECF No. 54 at 13.) There is no dispute that this condition had been diagnosed and was serious enough that his medical records document regular treatment for it. *Phillips*, 14 F.4th at 534; *see also Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) ("a serious medical condition carries with it a serious medical need…."). Indeed, it is the specific nature of the treatment that he received – the precise treatment that Defendants contend was not constitutionally deficient – that is the focus of Plaintiff's claim.

Regardless, assuming Plaintiff's serious medical need, under the circumstances here, he cannot rely on it alone to establish the objective element of his deliberate-indifference claim. *Phillips*, 14 F.4th at 536 (citing *See Anthony*, 701 F. App'x at 463–64). This is so because Plaintiff objects not to having received no treatment for his psoriasis but to having received other recognized courses of treatment for some period of time other than Humira injections – the only treatment he believed to be effective. Or, in Plaintiff's own words, "even if prison officials give inmates access to treatment, they may still be deliberately indifferent if they fail to provide prescribed treatment." (ECF No. 58 at 3.) Accordingly, Plaintiff's deliberate indifference claim unquestionably challenges the ***adequacy*** of the medical care he was provided. *See Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) ("But [plaintiff] does not allege that he received *no* medical treatment .... Instead, [plaintiff] complains that he was delayed in receiving a *specific type* of medical treatment…. He therefore disputes the adequacy of the treatment he

11

received….") (emphasis in original). Plaintiff's allegations scattered throughout his Complaint that he received treatment so cursory as to amount to no care at all cannot support a different view. (*See, e.g.,* ECF No. 5 at ¶¶ 43, 63.)

For this reason, as *Phillips* instructs, the relevant "question for the objective component is not whether defendants were incompetent or even committed medical malpractice in the care they provided, but whether [plaintiff] presented 'expert medical evidence' raising a material factual question that the extensive medical care he received was 'so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness.'" *Ashley*, 2021 WL 5911212, at *9 (quoting *Phillips*, 14 F.4th at 535, 537 (quotations omitted) ("In this case, [plaintiff] received substantial care and challenges the medical judgments of medical professionals. Our cases require expert testimony for this [ ] type of challenge.")).

Upon a detailed review of the record, the Undersigned finds that Plaintiff cannot "get past the objective stage" of his deliberate indifference claim as to any of the Defendants involved in Plaintiff's medical care "because he lacks any expert medical evidence showing that he received **grossly inadequate care**" for his psoriasis. *Ashley*, 2021 WL 5911212, at *9 *(quoting Philips,* at 536 (emphasis added)). As discussed above, Plaintiff contends that Defendants' treatment of his psoriasis was inadequate because they followed ineffective courses of treatment rather than prescribe Humira injections, the specific treatment he requested. Defendants do not appear to dispute that, prior to his commitment to the ODRC, Plaintiff had received Humira injections for his psoriasis or, for that matter, that this treatment, at least at the time, had been effective. (ECF No. 54 at 2.) Plaintiff's outside medical records from Oakview Dermatology, however, are not part of the record here. Moreover, there is no dispute that Plaintiff had not been receiving Humira injections while at CCI prior to his transfer to LoCI. Nevertheless, there are numerous

12

references throughout Plaintiff's institutional medical records indicating his self-report of previous, and presumably positive, treatment with Humira. *See, e.g.,* ECF No. 56-1 at 93 ALP Chronic Care Follow Up Form (was on Humira in the past placed back on Humira 6/5/2019); *Id*. at 136 Request for Non-Formulary Drug Prior Authorization Form ("has been on Humira in past" "with good response"); ECF 56-2 at 51 Progress Notes of Dr. Woods dated September 11, 2018 ("hx of psoriasis formerly on Humira"). There is no evidence in the record, however, to support Plaintiff's suggestion that, during the time period relevant to his claim, he had been under any ***prescribed*** treatment plan for Humira injections. And again, there is no medical documentation confirming Plaintiff's self-reports that Humira was effective in treating his psoriasis.

On the other hand, there is extensive evidence documenting his months of treatment with Defendant Woods for not only his psoriasis but for other presumably serious medical conditions as well, including asthma, hypertension, and diabetes. *See, e.g*., Dr. Barbara Woods Progress Notes dated between May 4, 2017 and January 18, 2019, ECF 56-2 at 24-154. These records indicate frequent monitoring and changes in Methotrexate dosages as well as additional recommended treatment with topical ointments and coal tar shampoo. Further, Plaintiff's medical records also confirm that the Collegial Review Board recommended alternative forms of treatment in its consideration of Plaintiff's psoriasis. *See, e.g.,* ECF 56-2 at 55 ("Case discussed at length with patient as well as with CR and it was decided following a lengthy discussion with CR that MTX would be discontinued due to Liver problems. Pt. would instead be treated with Naproxen 375 mg po BID prn Eucerin/Amylachydrin cream BID Traimcinolone cream .1% once a day").

13

Implicit in Plaintiff's claim here, of course, is the conclusion that Humira injections would have led to the elimination/minimization of his symptoms and prevented the development of psoriatic arthritis, such that any other course of treatment for his psoriasis must be found to be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (citation omitted). As noted, Plaintiff failed to support his summary judgment response with any evidentiary materials, let alone any form of expert medical evidence. This leaves the Undersigned with nothing beyond Plaintiff's speculation or his vague assertion of Humira's prior effectiveness in treating his psoriasis as a counter to "the medical judgments of medical professionals." *Phillips,* 14 F.4th at 537.

As the Sixth Circuit has acknowledged, courts frequently lack "the requisite medical expertise to properly evaluate" whether claims such as Plaintiff's have merit. *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017). That is the situation here as several questions come to mind. What type of care was objectively proper for Plaintiff's psoriasis? Were Humira injections the only proper course of treatment? Would Humira have alleviated his symptoms as Plaintiff contends? Did Plaintiff's other documented medical conditions have any impact on his symptoms? Absent expert medical evidence describing what a competent doctor would have done to treat Plaintiff's psoriasis and why Defendants' course of treatment was grossly incompetent, Plaintiff has failed to raise a genuine issue of material fact sufficient to survive summary judgment.

For these reasons, Defendants Wooten, Gardner, and Eddy are entitled to summary judgment as to Plaintiff's deliberate indifference claim relating to their decisions to follow a course of medical treatment other than that specifically requested by Plaintiff. At most, Plaintiff has demonstrated a disagreement with the treatment he has received. This simply is not enough.

"An inmate's 'disagreement with the testing and treatment he has received ... does not rise to the level of an Eighth Amendment violation.'" *Rhinehart,* 894 F.3d at 740 (quoting *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008) (citing *Estelle*, 429 U.S. at 107)). Nor does "a desire for additional or different treatment ... suffice to support an Eighth Amendment claim." *Id.* citing *Anthony*, 701 F. App'x at 464. Again, Plaintiff must present evidence from which a reasonable jury could find that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. (citations omitted.) As explained above, Plaintiff has not done so. Because the Undersigned finds that Plaintiff failed to meet the objective component of his deliberate indifference claim, there is no need to consider the subjective component.[3] *Phillips*, 14 F.4th at 535 ("Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate-indifference test.")[4]

## V.

For the reasons stated above, it is **RECOMMENDED** that the Court **GRANT** Defendants' Motion for Summary Judgment. (ECF No. 54.)

---

[3] The Undersigned notes it is undisputed that, in June 2019, approximately four months after the initiation of this lawsuit, Plaintiff began receiving Humira injections to treat his psoriasis. Plaintiff did not amend his Complaint and the Undersigned did not construe his current Complaint as setting forth any sort of claim for delay. Such a claim, however, would also require Plaintiff to set forth expert medical evidence in support. *Phillips*, 14 F.4th at 538 ("But this type of claim (that doctors delayed care) typically requires expert medical testimony too.") That is, Plaintiff would be required to present "expert medical evidence" sufficient to raise a material question of fact that the course of treatment administered to him was "so grossly inadequate" vis-à-vis the Humira injections as to "shock the conscience," or that "any delay [ ] exacerbated any harm." *Ashley,* 2021 WL 5911212, at *13 (quoting *Phillips*, 14 F.4th at 535-39). Moreover, on the current record, Plaintiff could not assert a delay in care but only a delay in the specific treatment of his choice.

[4] Notably, in *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017), a case cited but distinguished by Defendants for other reasons, the Sixth Circuit limited its focus to the subjective element. ("We … focus our determination on whether genuine disputes of material fact remain as to the second requirement—the subjective element." *Id*. at 367–68.) Accordingly, the Court found its analysis inapplicable here and, therefore, did not include any discussion of it.

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, it may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  January 14, 2022                                /s/ *Elizabeth A. Preston Deavers*
                                                                                      Elizabeth A. Preston Deavers
                                                                                      United States Magistrate Judge